IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KERI GRABLE, individually and             3:15-CV-00886-BR
on behalf of all similarly
situated,                                 OPINION AND ORDER

      Plaintiff,

v.

SAFEWAY INC., a foreign
corporation,

      Defendant.


DAVID ARTHUR SCHUCK
STEPHANIE J. BROWN
Schuck Law, LLC
10013 N.E. Hazel Dell Avenue
Suite 178
Vancouver, WA 98685
(360) 566-9243

      Attorneys for Plaintiff

ROMÁN D. HERNANDEZ
RICHARD G. PRICE
K&L Gates, LLP
One S.W. Columbia Street
Suite 1900
Portland, OR 97258
(503) 228-3200

      Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Keri Grabel's Motion (#6) to Remand.  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion.


<u>BACKGROUND</u>

The following facts are taken from the Complaint.

At some point Defendant Safeway Inc. hired Plaintiff as an at-will employee.  On March 1, 2015, Defendant terminated Plaintiff's employment.  Defendant did not pay Plaintiff her final wages on the following business day and instead paid her final wages on her next regularly scheduled payday, which was not the business day immediately following her termination.

On April 17, 2015, Plaintiff filed a putative class action against Defendant in Multnomah County Circuit Court in which Plaintiff asserted Defendant violated Oregon Revised Statute § 652.140 when it failed to pay Plaintiff and similarly situated individuals by the end of the first business day after their termination.  In her complaint Plaintiff defined the class as "[i]ndividuals who were terminated by Defendant in Oregon, within the three (3) year period preceding the commencement of this action."  Compl. at ¶ 4.

On May 22, 2015,[1] Defendant removed the matter to this Court alleging jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).

On June 16, 2015, Plaintiff filed a Motion to Remand on the ground that Defendant has not established this matter satisfies the requirements of CAFA.

The Court took the matter under advisement on July 23, 2015.


**STANDARDS**

An action filed in state court may be removed to federal court if the federal court would have had original subject-matter jurisdiction over the action.  28 U.S.C. § 1441(a).  CAFA provides federal courts with original jurisdiction over class-action lawsuits when

> the aggregate number of members of all proposed plaintiff classes is 100 or more persons . . . . If these prerequisites are met, CAFA vests federal courts with original diversity jurisdiction over a class action if:  (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant.  Under CAFA, complete diversity is not required; minimal diversity suffices.

*Bridewell-Sledge v. Blue Cross of Ca.,* Nos. 15-56039, 15-56038, 2015 WL 4939641, at *4 (9th Cir. Aug. 20, 2015)(quotations omitted)(citing 28 U.S.C. § 1332(d)(2)).

_____

[1] Plaintiff served Defendant with a copy of the complaint on April 23, 2015, therefore, Defendant's removal was timely.

Ordinarily the district court is required to "strictly construe [a] removal statute against removal jurisdiction" and to reject jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "'[N]o antiremoval presumption attends cases invoking CAFA, [however,] which Congress enacted to facilitate adjudication of certain class actions in federal court.'"  *Bridewell-Sledge,* 2015 WL 4939641, at *5 (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014)).  "To the contrary, 'CAFA should be read with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  *Id.* (quoting *Dart Cherokee*, 135 S. Ct. at 554).

## **DISCUSSION**

As noted, Plaintiff moves to remand this matter to state court on the ground that Defendant has not satisfied the requirements for removal pursuant to CAFA.  Specifically, Plaintiff asserts Defendant has not established by a preponderance of the evidence that CAFA's $5,000,000 amount-in-controversy requirement has been met.  Defendant, however, asserts it has satisfied that requirement.

In the alternative, Defendant contends certain of the putative class members' claims would be preempted by § 301 of the

4 - OPINION AND ORDER

Labor Management Relations Act and, therefore, the Court has federal-question jurisdiction.

## I.    Removal Pursuant to CAFA

The Ninth Circuit recently has "adhered to the rule that the defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

> As the Supreme Court has held, a removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). When, as here, "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554. As we further held in *Ibarra [v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015)], when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones. *Ibarra*, 775 F.3d. at 1199.

*Id.*

Plaintiff states in the caption of her Complaint that her claims are "in excess of $1,000,000 but less than $5,000,000" and alleges in paragraph 2 that the "aggregate total of the claims pled, including attorney fees, are less than five million dollars." Nevertheless, in its Notice of Removal Defendant asserts the amount in controversy exceeds five million dollars.

5 - OPINION AND ORDER

Specifically, Defendant notes

> in calendar year 2012, 3,987 Safeway employees who
> worked in Oregon were terminated *or resigned*; in
> calendar year 2013, 4,406 Safeway employees who
> worked in Oregon were terminated *or resigned*; in
> calendar year 2014, 4,978 Safeway employees who
> worked in Oregon were terminated *or resigned*; and,
> as of April 22, 2015, 1,387 Safeway employees who
> worked in Oregon were terminated *or resigned*.

Decl. of Michael Zagerman at ¶ 5 (emphasis added).  According to
Defendant, therefore, the potential putative class could number
as many as 14,758 individuals.  Defendant also notes it pays its
employees "in different ways and at a number of different hourly
rates."  For the purpose of calculating the potential damages of
the putative class, Defendant states it used Oregon's minimum
wages for 2012-2015.[2]  Finally, Defendant notes the penalty
provision of Oregon's wage-and-hour laws, Oregon Revised Statute
§ 652.150, allows for up to 30 days of penalty wages.  Plaintiff,
however, only claims between three and ten days of penalty wages
in paragraph 24 of her Complaint, and, therefore, Defendant used
ten days of penalty wages in calculating the amount in
controversy.  Using Defendant's calculations, the amount in
controversy could potentially be $10,611,908, which is well
beyond the $5,000,000 jurisdictional threshold in CAFA.

Plaintiff asserts in her Motion to Remand that Defendant's

---

[2] Oregon's minimum wage was $8.80 per hour in 2012, $8.95
per hour in 2013, $9.10 per hour in 2014, and $9.25 per hour in
2015.  Def.'s Notice of Removal at 7-8.

6 - OPINION AND ORDER

calculations rely on unreasonable assumptions, and, therefore, Defendant has not established by a preponderance of the evidence that it can satisfy CAFA's amount-in-controversy requirement. Specifically, Plaintiff points to three errors by Defendant: (1) Defendant includes data for employees who were terminated or who resigned outside of the class period, (2) Defendant relies on the number of employees who were terminated or who resigned, and (3) presuming ten days of penalty wages is legally improper.

### A.   Evidentiary Objection

Michael Zagerman testifies he is the HRIS Business Applications Manager for Defendant, that he reviewed the relevant records kept by Defendant in the ordinary course of business, and that he has personal knowledge of the facts in his Declaration. Zagerman Decl. at ¶¶ 1-3.  As noted, Zagerman also testifies in summary as to the number of employees who resigned or who were terminated by Safeway in 2012-2015 and as to the average hourly wage paid to those employees.  Zagerman Decl. at ¶¶ 3-4.  In her Reply Plaintiff asserts Zagerman's Declaration is inadmissible as to his summary of the number of employees who resigned or who were terminated by Safeway in 2012-2015 and as to the average hourly wage paid to those employees on the ground that Zagerman's Declaration violates the Federal Rules of Evidence 1002 and 602 and is also hearsay.  Courts, however, have held

> [u]nlike evidence presented at a summary judgment
> stage, evidence presented in support of class

7 - OPINION AND ORDER

> certification need not be admissible at trial.
> *See Dominguez v. Schwarzenegger*, 270 F.R.D. 477,
> 483 n.5 (N.D. Cal. 2010).  Defendants' objections
> shall be considered in weighing the probative
> nature of the evidence.

*Curtis v. Extra Space Storage, Inc.*, No. C 13-00319 WHA, 2013 WL

6073448, at *5 (N.D. Cal. Nov. 18, 2013).  In *Curtis* the

defendants objected to summaries of tenant files submitted by the

plaintiff's counsel in support of the plaintiff's motion for

class certification.  The court considered the defendant's

objections when weighing the plaintiff's evidence, but the court

did not strike the summaries.  *See also Hanon v. Dataproducts

Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)(district court may

consider evidence that supports or does not support class

certification, but a district court may certify a class without

supporting evidence); *Braun v. Safeco Ins. Co. of Am.,* No. CV

13-00607 BRO (PLAx), 2014 WL 9883831, at *3 (C.D. Cal. Nov. 7,

2014)("The court may consider evidence that may not be admissible

at trial.  As a result, the Court need not resolve every

evidentiary issue raised by Defendants.  To the extent the Court

considers evidence in support of Plaintiffs' motion to which

Defendants object, the Court overrules the objection."); *Blair v.

CBE Group, Inc.*, No. 13cv134-MMA (WVG), 2015 WL 5086375, at *4

(S.D. Cal. Aug. 26, 2015)("At the class certification stage, the

court makes no findings of fact and announces no ultimate

conclusions on Plaintiffs' claims.  Therefore, the Court may

consider inadmissible evidence at the class certification stage.
The court need not address the ultimate admissibility of the
parties' proffered exhibits, documents and testimony at this
stage, and may consider them where necessary for resolution of
the [Motion for Class Certification]."); *Mazza v. Am. Honda Motor
Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008)(citing *Eisen v.
Carlisle & Jacquelin*, 417 U.S. 156, 187 (1974)), *vacated on other
grounds by Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581 (9th
Cir. 2012).

The Court, therefore, in the exercise of its discretion,
considers Defendant's proffered evidence as appropriate.

**B.    Period Encompassed in the Class as Set Out in
       Plaintiff's Complaint**

As noted, Plaintiff defines the class in her Complaint
as employees who were terminated by Defendant in Oregon "within
the three year period preceding commencement of this action."
Compl. at ¶ 25.  According to Plaintiff, therefore, the period at
issue for the class is April 17, 2012, through April 17, 2015.
Defendant, however, includes in its calculations employees who
were terminated or who resigned before April 17, 2012, and
employees who were terminated or who resigned after April 17,
2015.

Defendant concedes Plaintiff's argument in its Response
to Plaintiff's Motion.  Defendant, therefore, recalculates the
possible damages based on 2,970 employees who resigned or who

9 - OPINION AND ORDER

were terminated in 2012 and 1,338 employees who were terminated
or who resigned in 2015 for a total possible amount in
controversy of $9,859,680, which still exceeds the $5,000,000
CAFA jurisdictional threshold.

**C.    Nature of Employees' Separation from Employment**

As noted, Defendant asserts 13,692 employees were
terminated or resigned from Safeway in the class period.
Defendant alleges it properly included employees who resigned in
its class calculations because Plaintiff has not specifically
defined the term "terminated" in the Complaint; Plaintiff has not
specifically alleged only a violation of Oregon Revised Statute
§ 652.140(1); and Oregon Revised Statute § 652.140 expressly
covers discharges, mutual agreements, and "quits" as three forms
of termination.  According to Defendant, therefore, the putative
class as alleged by Plaintiff could include employees who were
terminated or who resigned.

Plaintiff asserts, however, that Defendant has
impermissibly included employees who resigned because Plaintiff
defines the class in her Complaint as containing only individuals
who were terminated by Defendant.  Plaintiff contends her
Complaint, when viewed as a whole, makes clear that the class at
issue is comprised only of those employees who were fired.  For
example, Plaintiff describes the nature of the action as one to
recover penalty wages for "all former employees of Safeway, Inc.

('Defendant') who were terminated *by Defendant."*  Compl. at ¶ 1
(emphasis added).  Plaintiff also defines the class as
individuals "who were terminated *by Defendant* in Oregon."  Compl.
at ¶ 25 (emphasis added).  The phrase "by Defendant" throughout
the Complaint clearly indicates Defendant is the entity
performing the act of terminating the putative plaintiffs; *i.e.*,
an individual who quit or resigned cannot be described as someone
who has had his employment ended by Defendant because the
individual himself performs the act of quitting or resigning.

        The Complaint also contains other allegations that make
clear the putative class is comprised only of those individuals
who were fired by Defendant rather than employees who resigned or
quit.  For example, Plaintiff alleges:

>        When *Defendant terminates* an employee, it
>        regularly pays the employee's final wages on the
>        next regularly scheduled payday.
>
>        When *Defendant terminated* other employees,
>        Defendant had a practice of paying final wages on
>        payday.
>
>        The conduct at issue in this case affected all
>        individuals *Defendant terminate* from its
>        employment.  Common questions include:
>
>                          * * *
>
>        (c)  Whether *Defendant terminated* Plaintiff
>             and similarly situated individuals.
>
>                          * * *
>
>        (e)  Whether Defendant maintained records of
>             dates *it terminated* employees.

* * *

> Defendant knew similarly situated individuals'
> employment had ended because it had *fired each of*
> *them.*

Compl. at ¶¶ 17, 21, 27(c), 27(e), 46 (emphasis added).

According to Plaintiff, therefore, Defendant's use of employees

who resigned in its calculation of the number of possible class

members is unreasonable.

Defendant did not provide the Court with any

information from which the Court could determine how many of its

13,692 former employees resigned and how many were terminated.

Thus, the Court does not have any reasonable basis from which to

infer the number of possible class members or, as a result, the

amount of damages at issue.  The Court, therefore, concludes

Defendant has not shown by a preponderance of the evidence that

the amount in controversy meets the $5,000,000 CAFA

jurisdictional threshold.

Accordingly, the Court concludes Defendant has not

established that this Court has jurisdiction pursuant to CAFA.

**II.  Removal Pursuant to the LMRA**

In the alternative, Defendant contends removal was proper,

and this Court has jurisdiction because Plaintiff's state-law

claim is completely preempted by § 301 of the LMRA.

**A.    Removal Standard**

In the context of removal on the ground of complete

preemption (unlike in the context of removal under CAFA) the
Ninth Circuit applies "a 'strong presumption against removal
jurisdiction [which] means that the defendant always has the
burden of establishing that removal is proper.'" *Geographic
Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d
1102, 1107 (9ᵗʰ Cir. 2010)(quoting *Gaus*, 980 F.2d at 566).  Thus,
"[f]ederal jurisdiction must be rejected if there is any doubt as
to the right of removal in the first instance." *Id*. (quotation
omitted).  A party seeking removal bears the burden of
establishing by a preponderance of the evidence that all removal
requirements are met. *Serrano v. 180 Connect, Inc.*, 478 F.3d
1018, 1021 (9ᵗʰ Cir. 2007). *See also Valdez v. Allstate Ins.
Co.*, 372 F.3d 1115, 1117 (9ᵗʰ Cir. 2004).

   **B.    Preemption under § 301 of the LMRA**

       Section 301 of the LMRA provides:

            Suits for violation of contracts between an
            employer and a labor organization
            representing employees in an industry
            affecting commerce . . . may be brought in
            any district court of the United States
            having jurisdiction of the parties, without
            respect of the amount in controversy or
            without regard to the citizenship of the
            parties.

29 U.S.C. § 185(a).  The Supreme Court has interpreted § 301 to
authorize the federal courts to develop a federal common law for
the interpretation of Collective Bargaining Agreements (CBAs).
*Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (2001)

13 - OPINION AND ORDER

(citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).  Federal common law preempts the use of state contract law in interpreting and enforcing CBAs.  *Id.* (citing *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962)). In 1985 the Supreme Court "expanded application of § 301 preemption beyond cases specifically alleging contract violation to those whose resolution 'is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'"  *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).

In *Caterpillar, Inc. v. Williams* the Supreme Court noted "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."  482 U.S. 386, 394 (1987).  The Court, however, pointed out that "§ 301 preempts only 'claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.'"  *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)).

In *Livadas v. Bradshaw* the Supreme Court noted "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action [is preempted]."  512 U.S. 107, 122-24

14 - OPINION AND ORDER

(1994)(internal citations and quotations omitted).  In summary,

> [i]f the plaintiff's claim cannot be resolved
> without interpreting the applicable CBA . . . it
> is preempted.  *See also Hechler*, 481 U.S. at
> 861-62, 107 S. Ct. 2161.  Alternatively, if the
> claim may be litigated without reference to the
> rights and duties established in a CBA . . . it is
> not preempted.  *See also Livadas*, 512 U.S. at
> 124-25, 114 S. Ct. 2068.  The plaintiff's claim is
> the touchstone for this analysis; the need to
> interpret the CBA must inhere in the nature of the
> plaintiff's claim.  If the claim is plainly based
> on state law, § 301 preemption is not mandated
> simply because the defendant refers to the CBA in
> mounting a defense.  *See Caterpillar*, 482 U.S. at
> 398-99, 107 S. Ct. 2425.

*Cramer*, 255 F.3d at 691.

> This is true even in some instances in which the
> plaintiffs have not alleged a breach of contract
> in their complaint, if the plaintiffs' claim is
> either grounded in the provisions of the labor
> contract or requires interpretation of it.  *See
> Lueck*, 471 U.S. at 210, 105 S. Ct. 1904 ("If the
> policies that animate [section] 301 are to be
> given their proper range, . . . the preemptive
> effect of [section] 301 must extend beyond suits
> alleging contract violations.").  Otherwise,
> parties would be able "to evade the requirements
> of section 301 by relabeling their contract claims
> as claims for tortious breach of contract" or some
> other state cause of action, and thus "elevate
> form over substance."  *Id*. at 211, 105 S. Ct.
> 1904.

*Burnside v. Kiewit Pac. Corp*., 491 F.3d 1053, 1060 (9th Cir.

2007).

## C.  Analysis

Defendant asserts removal of this matter was proper

under § 301 of the LMRA because the appropriate timing of payment

of final wages to some potential class members may depend on

15 - OPINION AND ORDER

provisions of various CBAs that Defendant entered into with
various unions.  For example, Defendant points out that its CBA
with the Bakery, Confectionery, Tobacco Workers and Grain Millers
International Union, AFL-CIO, Local No. 114, of Portland, Oregon,
governs Defendant's employment relationship with the unionized
employees who form part of that bargaining unit.  Article 5.5 of
that CBA provides:

> Payment of Wages upon Termination of Employment.
> Upon termination for any reason (including but not
> limited to discharge, retirement, or voluntary
> quit with or without prior notice) the Employer
> shall have until the next regularly scheduled pay
> day for the pay period in which the day the
> employee's termination falls, to pay the employee
> all wages earned and unpaid at the time of the
> employee's termination.

Decl. of Annemarie Kiddle, Ex. 1 at 3.  Defendant contends it has
"dozens" of CBAs governing its relationship with various
employees, some of whom may be included in the putative class.
Defendant asserts many of these CBAs may include schedules for
the payment of final wages that differ from the timing mandated
by Oregon Revised Statute § 652.140.  According to Defendant,
therefore, the Court would have to interpret these various CBAs
to determine whether some class members' final wages on
termination were, in fact, timely paid.  Thus, whether
Plaintiff's claim is preempted by § 301 could depend on the
meaning of a CBA for some class members.

        Plaintiff, however, points out that in her Complaint

16 - OPINION AND ORDER

she alleges:  (1) she was an at-will employee not subject to a
"contract," (2) all members of the putative class are "similarly
situated" to Plaintiff, and (3) putative class members' claims
are "based upon the same legal and remedial theories . . . and
involve similar factual circumstances" as Plaintiff's claim.
Compl. at ¶¶ 12-13, 25, 28(c).  According to Plaintiff,
therefore, the class as defined in her Complaint does not include
union members subject to a CBA, and resolution of the putative
class members' claims would not depend on or require
interpretation of any CBA.  Thus, Plaintiff contends her claim is
not preempted by the LMRA, and, therefore, this Court does not
have jurisdiction on the basis of LMRA preemption.

        Although Plaintiff perhaps could have been more clear
in setting out the parameters of the putative class to exclude
with particularity former employees who are subject to a CBA,
courts under similar circumstances have held they "must defer to
Plaintiff's interpretation" of the allegations of the Complaint
when faced with ambiguity.  *Polkey v. Waste Mgmt. of Wa., Inc.*,
No. C09-0447-JCC, 2009 WL 1936257, at *3 (W.D. Wash. July 6,
2009).  *See also Lippitt v. Raymond James Fin. Servs., Inc.*, 340
F.3d 1033, 1041 (9th Cir. 2003)(deferring to the plaintiff's
interpretation of a complaint that was "the opposite of a model
of clarity" because the complaint "c[ould] be read in the way
[that the plaintiff] assert[ed]"); *E. States Health & Welfare*

*Fund v. Philip Morris, Inc.*, 11 F. Supp. 2d 384, 393 (S.D.N.Y. 1998)("[T]he principle that the plaintiff is master of the complaint also counsels in favor of construction in accordance with the representations of the plaintiffs."); *Atanasio v. Bhd. of Locomotive Eng'rs & Trainmen*, 424 F. Supp. 2d 476, 485 (E.D.N.Y. 2006)("As master of the complaint, which is ambiguous as to whether he is seeking relief under state or federal law, [the plaintiff's] motion to remand clearly demonstrates his desire to rely exclusively on rights conferred by state law. Therefore, [federal labor laws] cannot be the basis for a removal."). Moreover, "'[f]ederal courts have repeatedly held that vague, ambiguous, or passing references to federal law in a complaint are not sufficient to support removal based on federal question jurisdiction.'" *Polkey*, 2009 WL 1936257, at *3 (quoting *Shelley's Total Body Works v. City of Auburn*, No. C07-0126-MJP, 2007 WL 765205, at *2 (W.D. Wash. Mar. 9, 2007)). *See also Hardin v. Morgan Bldgs. & Spas, Inc.*, No. SA-07-CA-388, 2007 WL 2021775, at *2 (W.D. Tex. June 26, 2007)("Because . . . ambiguities with respect to removal should be construed in favor of remand, the unclear phrasing of plaintiff's statement weighs in favor of remanding this case to state court." (quotation omitted)).

The Court finds Defendant has not satisfied its burden to establish that removal is proper because Defendant has not

18 - OPINION AND ORDER

established that Plaintiff's claim or the claims of the putative
class as defined by Plaintiff depend on or require interpretation
of any CBA.  The Court, therefore, concludes on this record that
Defendant has not established this matter is preempted by the
LMRA and that this Court has jurisdiction.

Accordingly, the Court grants Plaintiff's Motion to
Remand.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#6)
to Remand and remands this matter to Multnomah County Circuit
Court.

IT IS SO ORDERED.

DATED this 5th day of October, 2015.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

19 - OPINION AND ORDER